CHARLES McLAUGHLIN & others *vs*. ATLANTIC MUTUAL
INSURANCE COMPANY.

The body of a policy on a cargo of molasses provided that the company were
"not liable for leakage on molasses ... unless occasioned by stranding or col-
lision." The margin contained the following memoranda: "On molasses ... if
by shifting of cargo owing to stress of weather, any casks become stove or
broken, and the staves started by each other, so as to lose their entire con-
tents, and the same amount to fifteen per cent on the quantity laden (being
five per cent over ordinary 'leakage), the said excess of five per cent or over
on the quantity shipped to be paid for by the company; but this company not
liable for leakage arising from causes other than as above mentioned." *Held*,
(1) That the company were not liable for any loss by leakage unless occasioned
by stranding; nor (2) For any loss by shifting of the cargo unless it amounts
to fifteen per cent of the whole quantity laden.
Such memoranda upon the margin of a policy are a part of the contract of in-
surance.

ON FACTS AGREED.

ASSUMPSIT on a policy of insurance upon a cargo of molasses and
sugar.

The terms of the policy sufficiently appear in the opinion.

The brig, named in the policy, sailed from Matanzas for Port-
land, on the 19th of Feb., 1866, with a cargo of molasses and
sugar, consisting of 406 hhds., eighty-seven tierces and six barrels.
On the voyage she experienced heavy weather, and there was a
loss over and above the usual allowance of ten per cent for ordinary
leakage of four thousand four hundred and seventeen gallons of
molasses, which was from leakage caused by the perils of the sea.
The sufficiency of the formal proof of the loss was not questioned.
So much of the port-warden's certificate as is essential is as fol-
lows:

"Having duly examined and surveyed the storage of the follow-
ing goods, viz.: 2 hhds., empty, shifted; 2 hhds., empty, leakage;
2 tierces, empty, shifted; 2 tierces, half out, leakage; 1 bbl., empty,
leakage; 2 tierces, half out, leakage,—declare that the damage done
to the aforesaid cargo of molasses, stated as above, is in conse-

quence of heavy gales, and straining of casks, and leakage on her passage from Cuba to Portland." The cargo was well stored and bedded."

The gauger's certificate show 32 hhds. and 9 tierces empty.

The court to enter judgment according to the legal rights of the parties.

*J. & E. M. Rand*, for the plaintiffs.

The case finds the loss of 11,122 gallons out of a cargo of 67,-057 gallons; and that the 4,417 gallons, over and above the ten per cent for ordinary leakage, was " caused by the perils of the sea." The defendants insured against the perils of the sea.

The clause in the body of the policy in regard to leakage refers only to ordinary leakage. To apply it to leakage caused by the perils of the sea, would be inconsistent with the nature and object of the contract itself.

Indeed, the loss of the 4,417 gallons can with no propriety be called a loss by leakage. It is a loss by perils of seas.

By the general terms of the body of the policy the defendants are liable for the loss over the ten per cent. If the marginal clause was intended to, or does upon a proper construction, exonerate the defendants from losses caused by perils of seas, then it should be disregarded as being utterly at variance with the nature, object, and terms of the body of the contract. Few losses could occur which could meet the exact words.of this contract.

An utter rejection of the clause is not necessary. It is to be construed in connection with the body of the policy and its object and purpose, which were to protect the insured against losses caused by perils of seas; and that it shall receive such construction as will reasonably uphold, and not unreasonably destroy the policy. The principal object of the clause appears to have been to exonerate the defendants from losses less than fifteen per cent on liquids. This limits, but does not destroy the contract in the body of the policy, and may reasonably be allowed to have its proper effect.

The clause should be construed to mean that upon molasses and

other liquids, if by the perils of the seas a loss of fifteen per cent occurs, the excess over ten per cent will be paid by the company.

*Davis & Drummond*, for the defendants.

1. The memorandum clause in a policy of insurance, like the body of the instrument, is the language of the underwriter. If ambiguous, it is to be construed most strongly against him; but if not ambiguous, it is to have its usual interpretation and force, as a substantive part of the contract.

The words are to be so construed as to serve the intention, and not so as to defeat it. *Palmer* v. *Warren Ins. Co.*, 1 Story, 360.

2. The object of the memorandum clause is to protect the underwriter from any partial loss on articles that are peculiarly liable to decay, waste, or become damaged from causes other than perils of the seas, where it would be difficult to determine the actual cause; or if several causes combined to apportion the damage. *Hugg* v. *Augusta Ins. Co.* 7 How. 595.

3. In accordance with this principle, in all cases of partial loss of the memorandum articles, unless the case is fairly within the stipulations of the memorandum, though the loss was caused solely by the perils of the seas, the underwriters have been held not to be liable. *Ellery* v. *Merchants Ins. Co.*, 3 Pick. 46. No loss on salt, grains, hides, fish, &c., unless seven per cent, "and happens by stranding or bilging." *Lake* v. *Columbus Ins. Co.*, 13 Ohio, 48. No loss on grain, unless by "stranding."

It should be noticed that the memorandum incorporated into the body of the policy excludes this loss.

Therefore, unless the additional memorandum in the margin affirmatively embraces this case, the plaintiff cannot recover. The question is not, is it excluded? but, is it included in the marginal clause? Most clearly it is not.

TAPLEY, J. This is an action of assumpsit upon a policy of insurance, issued upon a cargo of molasses and sugar.

"There was a loss, over and above the usual allowance of ten per cent for ordinary leakage, of 4,417 gallons of molasses, which

loss was occasioned by the perils of the seas." In the body of the policy it is provided that the company shall "not be liable for leakage on molasses, or other liquids, unless occasioned by stranding, or collision with another vessel."

Upon the margin of the policy it is provided, that, "On molasses and other liquids, if by shifting of cargo, owing to stress of weather, any casks become stove or broken, and the staves started by each other, so as to lose their entire contents, and the same amounts to fifteen per cent on the quantity laden (being five per cent over ordinary leakage), the said excess of five per cent or over, on the quantity shipped, to be paid for by the company; but this company not to be liable for leakage from causes other than those above mentioned."

These memoranda are parts of the contract of insurance, and are alike binding, whether found in the body of the policy or upon its margin.

It will be seen that the liability of the company for leakage of molasses, is limited to that occasioned by stranding, collision, and shifting of cargo by stress of weather. That arising from shifting of cargo is subject to another condition, viz., that it is such as occasioned a loss of the entire contents of the casks stove, and to an extent equal to fifteen per cent of the whole amount laden.

Upon a careful consideration of the whole contract, we find its legal effect the same as if it had been expressed in these terms: "Not liable for leakage on molasses, or other liquids, unless occasioned by stranding, or collision with another vessel; provided, however, if by shifting of the cargo, owing to stress of weather, any casks become broken and the staves started by each other so as to lose the entire contents of such casks, and such loss amounts to fifteen per cent of the whole quantity laden, the company will be liable for so much as shall be thus lost, over and above ten per cent of the quantity laden."

By recurring to the bill of lading, it will be found there were laden on board 406 hogsheads and eighty-seven tierces of molasses, of which, it appears by the certificate of the port-warden and sur-

veyor, two hogsheads and two tierces lost their entire contents by shifting, the other losses being leakage merely, and in but a single instance reaching the " entire contents " of the cask.

The loss occasioned by shifting being less than fifteen per cent of the quantity laden, the defendants are not liable therefor, and there must be                    *Judgment for the defendants.*

CUTTING, KENT, DICKERSON, and DANFORTH, JJ., concurred.